# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| GREG HUGGINS, Individually and For Others Similarly Situated,<br>　　　　　Plaintiff,<br><br>v.<br><br>BOARDWALK PIPELINES, LP,<br>　　　　　Defendant. | Case No. 4:21-cv-02273<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COMPLAINT

### SUMMARY

1. Plaintiff Greg Huggins (Huggins) brings this lawsuit to recover unpaid overtime wages and other damages from Boardwalk Pipelines, LP (Boardwalk) under the Fair Labor Standards Act (FLSA).

2. Huggins worked for Boardwalk as a Welding Inspector.

3. Huggins and the Day Rate Inspectors (as defined below) regularly worked for Boardwalk in excess of forty (40) hours each week.

4. But Boardwalk did not pay them overtime.

5. Instead of paying overtime as required by the FLSA, Boardwalk improperly paid Huggins and the Day Rate Inspectors a daily rate with no overtime compensation.

6. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District.

9. Boardwalk is headquartered in Harris County, Texas.

10. Huggins worked for Boardwalk in Montgomery County, Texas.

## THE PARTIES

11. Huggins worked for Boardwalk from approximately January 2020 until May 2020 as a Welding Inspector.

12. Throughout his employment, Boardwalk paid Huggins a flat daily rate for each day worked regardless of the total hours worked in a workweek ("day rate pay plan").

13. Huggins's consent to be a party plaintiff is attached as Exhibit A.

14. Huggins brings this action on behalf of himself and all other similarly situated workers who were paid by Boardwalk's day-rate system. Boardwalk paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in violation of the FLSA.

15. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All current and former inspectors who worked for or on behalf of Boardwalk Pipelines, LP through EnSite USA, Inc. and who were paid according to the day rate pay plan in the past three (3) years (the "Day Rate Inspectors").**[1]

16. The identities of the Day Rate Inspectors can be readily ascertained from Boardwalk's records.

---

[1] This matter is related to *Doucet v. Boardwalk Pipelines, LP*, NO. 4:20-cv-01793, pending in the Southern District of Texas in that it involves inspectors staffed to Boardwalk who are paid a day rate. Plaintiff's counsel attempted to reach an agreement regarding how to proceed with Huggins and the proposed collective over the past several weeks. Counsel for the Parties were unable to reach an agreement as to the direction of the Huggins case.

17. Boardwalk Pipelines, LP is a Delaware Limited Partnership and may be served with process by serving its registered agent: Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

## COVERAGE UNDER THE FLSA

18. At all times hereinafter mentioned, Boardwalk was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19. At all times hereinafter mentioned, Boardwalk was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

20. At all relevant times, Boardwalk has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

21. At all relevant times, Boardwalk has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

22. In each of the past 3 years, Boardwalk's annual gross volume of sales has well exceeded $1,000,000 for at least the past 3 years.

23. At all relevant times, Huggins and the Day Rate Inspectors were engaged in commerce or in the production of goods for commerce.

24. Boardwalk uniformly applied its policy of paying its Inspectors, including Huggins, a day rate with no overtime compensation.

25. Boardwalk applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

26. By paying its Inspectors a day rate with no overtime compensation, Boardwalk violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

27. As a result of this policy, Boardwalk and the Day Rate Inspectors do not receive overtime as required by the FLSA.

28. Boardwalk's uniform compensation scheme of paying its Inspectors a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## THE FACTS

29. Boardwalk provides transportation and storage of natural gas and liquids. The Company owns and operates interconnected natural gas pipelines.

30. To complete its business objectives, it hires personnel (like Huggins) to perform inspection work.

31. Many of these individuals worked for Boardwalk on a day rate basis (without overtime pay).

32. These workers make up the proposed collective of Day Rate Inspectors.

33. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

34. Throughout his employment with Boardwalk, Boardwalk paid him on a day rate basis.

35. Huggins and the Day Rate Inspectors work for Boardwalk under its day rate pay scheme.

36. Huggins and the Day Rate Inspectors do not receive a salary.

37. If Huggins and the Day Rate Inspectors did not work, they did not get paid.

38. Huggins and the Day Rate Inspectors receive a day rate.

39. Huggins and the Day Rate Inspectors do not receive overtime pay.

40. This is despite the fact Huggins and the Day Rate Inspectors often worked 10 or more hours a day, for 7 days a week, for weeks at a time.

41. For example, Huggins received a day rate for each day he worked for Boardwalk.

42. Although he typically worked 7 days a week, for 10 or more hours a day, he did not receive any overtime pay.

43. Huggins and the Day Rate Inspectors received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

44. Huggins and the Day Rate Inspectors are not employed on a salary basis.

45. Huggins and the Day Rate Inspectors do not, and never have, received guaranteed weekly compensation from Boardwalk irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

46. Huggins and the Day Rate Inspectors work in accordance with the schedule set by Boardwalk and/or its clients.

47. Huggins's work schedule is typical of the Day Rate Inspectors.

48. Boardwalk controls Huggins and the Day Rate Inspectors' pay.

49. Likewise, Boardwalk and/or its clients control Huggins and the Day Rate Inspectors' work.

50. Boardwalk requires Huggins and the Day Rate Inspectors to follow Boardwalk and/or its clients' policies and procedures.

51. Huggins and the Day Rate Inspectors' work must adhere to the quality standards put in place by Boardwalk and/or its clients.

52. Huggins and the Day Rate Inspectors are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

53. As an Inspector, Huggins was responsible for ensuring Boardwalk's and/or its clients' projects were completed according to established guidelines, specifications, and restrictions.

54. All Boardwalk's Day Rate Inspectors perform similar duties, inspecting projects, ensuring work is done according to established guidelines, specifications, and restrictions.

55. Huggins and the Day Rate Inspectors provide inspection reports to Boardwalk (and/or its clients') personnel.

56. At all relevant times, Boardwalk and/or its clients maintained control over Huggins and the Day Rate Inspectors via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

57. Huggins and the Day Rate Inspectors do not have the power to hire or fire any employees.

58. Huggins's working relationship with Boardwalk is similar Boardwalk's relationship with its other Day Rate Inspectors.

59. Boardwalk knew Huggins and the Day Rate Inspectors worked more than 40 hours in a week.

60. Boardwalk knew, or showed reckless disregard for, whether the Day Rate Inspectors were entitled to overtime under the FLSA.

61. Nonetheless, Boardwalk failed to pay Huggins and the Day Rate Inspectors overtime.

62. Boardwalk willfully violated the FLSA.

## CAUSES OF ACTION
## FLSA VIOLATIONS

63. By failing to pay Huggins and those similarly situated to him overtime at one-and-one-half times their regular rates, Boardwalk violated the FLSA's overtime provisions.

64. Boardwalk owes Huggins and those similarly situated to him the difference between the rate actually paid and the proper overtime rate.

65. Because Boardwalk knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Boardwalk owes these wages for at least the past three years.

66. Boardwalk is liable to Huggins and those similarly situated to him for an amount equal to all unpaid overtime wages as liquidated damages.

67. Huggins and those similarly situated to him are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COLLECTIVE ACTION ALLEGATIONS

68. Huggins incorporates all previous paragraphs and alleges that the illegal pay practices Boardwalk imposed on Huggins were likewise imposed on the Putative Class Members.

69. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

70. Numerous other individuals who worked with Huggins indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

71. Based on his experiences and tenure with Boardwalk, Huggins is aware that Boardwalk's illegal practices were imposed on the Day Rate Inspectors.

72. The Day Rate Inspectors were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

73. Boardwalk's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Inspectors.

74. Huggins's experiences are therefore typical of the experiences of the Day Rate Inspectors.

75. The specific job titles or precise job locations of the Day Rate Inspectors do not prevent class or collective treatment.

76. Huggins has no interests contrary to, or in conflict with, the Day Rate Inspectors. Like each Day Rate Inspector, Huggins has an interest in obtaining the unpaid overtime wages owed to him under federal law.

77. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

78. Absent this action, many Day Rate Inspectors likely will not obtain redress of their injuries and Boardwalk will reap the unjust benefits of violating the FLSA and applicable state labor laws.

79. Furthermore, even if some of the Day Rate Inspectors could afford individual litigation against Boardwalk, it would be unduly burdensome to the judicial system.

80. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

81. The questions of law and fact common to the Day Rate Inspectors predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether the Day Rate Inspectors' rights were violated as a result of Boardwalk's day rate pay plan;

      b.      Whether Boardwalk's day rate pay plan was made in good faith;

      c.      Whether Boardwalk's decision to not pay time and a half for overtime to the Day Rate Inspectors was made in good faith;

      d.      Whether Boardwalk's violation of the FLSA was willful; and

      e.      Whether Boardwalk's illegal pay practices were applied uniformly across the nation to all Day Rate Inspectors.

82. Huggins's claims are typical of the claims of the Day Rate Inspectors. Huggins and the Day Rate Inspectors sustained damages arising out of Boardwalk's illegal and uniform employment policy.

83. Huggins knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

84. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

### JURY DEMAND

85. Huggins demands a trial by jury

### PRAYER

86. WHEREFORE, Huggins prays for judgment against Boardwalk as follows:

      a.      An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. For an Order pursuant to Section 16(b) of the FLSA finding Boardwalk liable for unpaid back wages due to Huggins and the Day Rate Inspectors for liquidated damages equal in amount to their unpaid compensation;

c. For an Order awarding Huggins and the Day Rate Inspectors their reasonable attorneys' fees and expenses as provided by the FLSA;

d. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

e. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
State Bar No. 24014780
**Andrew W. Dunlap**
State Bar No. 24078444
**Carl A. Fitz**
State Bar No. 24105863
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
cfitz@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**